# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SILAS QUIXAL,**[1] | **Civil Action No. 16-8218 (SDW)** |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **PATRICK NOGAN, et al.,** | |
| **Respondents.** | |

**WIGENTON**, District Judge:

Presently before the Court is the *pro se* amended petition for a writ of habeas corpus of Silas Quixal ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging Petitioner's state court conviction. (ECF No. 7). The State filed a response to the petition (ECF No. 12), to which Petitioner has replied. (ECF No. 24). For the following reasons, this Court will deny the petition and deny Petitioner a certificate of appealability.

## I. BACKGROUND

In its opinion affirming Petitioner's conviction, the Superior Court of New Jersey – Appellate Division provided the following summary of Petitioner's criminal trial and conviction:

> Tried to a jury, [Petitioner] was convicted of aggravated sexual assault upon a victim less than thirteen years of age, a crime of the first degree, N.J.S.A. 2C:14-2a(1); endangering the welfare of a child, a crime of the third degree, N.J.S.A. 2C:24-4a; and sexual assault upon a victim less than thirteen years of age, a crime of the second degree, N.J.S.A. 2C:14-2b. The trial court sentenced [Petitioner] to nineteen years in prison, subject to the provisions of N.J.S.A. 2C:43-7.2, the No Early Release Act ("NERA"), for

---

[1] In his submissions to this Court, Petitioner has spelled his name as both "Quixcel" (ECF No. 1 at 2) and "Quixal" (ECF No. 3 at 1). For the sake of consistency, this Court will use "Quixal."

aggravated sexual assault; four years in prison for endangerment, to be served concurrently; and nine years in prison, subject to NERA, for sexual assault, to be served consecutively. . . .

[Petitioner's] victim was S.B., who was six years old at the time of the incident. S.B.'s mother had some plants she wished to have repotted so she drove to a local nursery, taking S.B. and her sixteen-month-old daughter with her. While they were waiting for the plants to be repotted, S.B. became separated from her mother. Her mother went through the store, calling for S.B. and found her at the end of one the aisles. [Petitioner] was nearby, and S.B. had a strange expression on her face. Her mother asked if S.B. had not heard her calling for her, but S.B. did not answer. Her mother asked what she had been doing, but S.B. said she could not tell her. Her mother asked if [Petitioner] had told her not to say anything, and S.B. nodded affirmatively. S.B.'s mother assured her she would not be angry with S.B. and that [Petitioner] would not either. S.B. then told her mother that [Petitioner] had kissed her and licked her; she pointed to her vaginal area. S.B.'s mother went immediately to store personnel to report what her daughter had told her and they summoned the police.

Police Officer Michael Boccher of the Paramus Police Department responded to the scene. He spoke with S.B., who repeated what she had told her mother. Officer Boccher asked S.B. if she could show him, where in the store the incident occurred. She agreed and led him toward the rear. On the way, [Petitioner] happened to pass by. S.B. spontaneously identified [Petitioner] to Officer Boccher as the man who had assaulted her.

The police spoke to [Petitioner], who appeared nervous and upset. When he asked what would happen to him if he told them the truth, he was placed under arrest and verbally advised of his *Miranda* rights. *See Miranda v. Arizona*, [384 U.S. 436] (1966).

S.B. was interviewed by Detective Barbara Stio of the prosecutor's Sex Crimes and Child Abuse Unit at the Audrey Hepburn Children's House. Detective Stio has been trained in conducting forensic interviews of children in connection with claims of sexual abuse. She repeated what she had told her mother. She also said that [Petitioner] had taken out his penis and asked her to touch it, but she refused. Following that interview, S.B. was examined by a physician and her clothing was taken for examination. Subsequent testing at the State Police laboratory disclosed the presence of [Petitioner's] DNA on S.B.'s underpants.

After [Petitioner] was arrested, he was transported to the prosecutor's office, where he was again advised of his *Miranda* rights and executed a written waiver. He was questioned by Sergeant Cilento of the prosecutor's sex crimes and child abuse squad. Confronted with S.B.'s allegations, [Petitioner] confessed. Following a pretrial hearing, [Petitioner's] confession was ruled admissible at his trial.

During [Petitioner's] trial, the prosecution presented a number of witnesses, including Detective Stio, who testified with respect to her interview of S.B. and Sergeant Cilento, who testified with respect to his interrogation of [Petitioner].

*State v. Quixal*, No. A-5879-07T4, 2010 WL 5419109, at *1-3 (N.J. Super. Ct. App. Div. Apr. 19, 2010).

In its 2016 opinion affirming the denial of Petitioner's state court petition for post-conviction relief, the Appellate Division additionally noted the following about the evidence underlying Petitioner's conviction:

The testimony at trial established that [Petitioner] worked at a garden center. The six-year-old victim had come to the center with her mother. When the child was separated from her mother, she encountered [Petitioner] and asked for help to find her mother. [Petitioner] took the child to a secluded area of the garden center, kissed her on the lips, pulled her pants and underwear down and licked her on her vagina. The child also reported that [Petitioner] had taken out his penis and asked her to touch it, but she refused.

Shortly after the incident, the child gave a recorded statement that was played at trial, and the child also testified at trial. The State introduced DNA evidence taken from the inside of the child's underwear. The DNA analysis showed that cells from a male's saliva were found on the inside of the child's underwear and [Petitioner's] DNA matched the DNA found on the underwear.

[Petitioner] also gave a statement to the police during which he admitted to kissing the victim "on the vagina," which he also described as "[o]n top of the vagina." [Petitioner's] statement was admitted at trial. At trial [Petitioner] testified that when he encountered the child, she asked him to help her find her mother. When he said he would help, the child kissed him and he kissed her on her stomach. [Petitioner] denied sexually assaulting the child,

and testified that he told the police what they wanted to hear because he was afraid.

*State v. Quixal*, No. A-1966-14T2, 2016 WL 1637217, at *1-2 (N.J. Super. Ct. App. Div. Apr. 26, 2016) (footnote omitted). As the foregoing makes clear, "the evidence of [Petitioner's] guilt at trial was strong. The victim gave a statement and testified, [Petitioner] gave a statement, and there was DNA evidence." *Id.* at *3.

Following his conviction and sentence, Petitioner appealed. *See Quixal*, 2010 WL 5419109. On appeal, the Appellate Division affirmed his conviction, but remanded for resentencing because "the trial court gave no reasons for imposing consecutive sentences." *Id.* at *3. The Appellate Division instructed "the trial court to determine anew whether consecutive sentences are appropriate and, if it is satisfied they are, to place its reasons upon the record." On June 22, 2010, the trial court resentenced Petitioner to "the same term" of imprisonment.[2] *State v. Quixal*, 70 A.3d 749, 750 (N.J. Super. App. Div. 2013). The New Jersey Supreme Court denied certification of Petitioner's direct appeal on July 12, 2010. *State v. Quixal*, 999 A.2d 463 (N.J. 2010) (Table).

On or about May 12, 2014, Petitioner filed a counseled petition for post-conviction relief ("PCR") in the state trial court (the "PCR court").[3] (*See* Aug. 1, 2014 PCR Hr'g Tr. 3, ECF No.

---

[2] Petitioner does not appear to have filed an appeal challenging the sentence he received as a result of that resentencing.

[3] Petitioner submitted two *pro se* PCR petitions before filing the counseled PCR petition referenced above. *State v. Quixal*, 70 A.3d 749, 751 (N.J. Super. App. Div. 2013). The trial court denied both of those petitions. *Id.* The Appellate Division reversed, finding that based on the circumstances and manner in which those uncounseled petitions were submitted, Petitioner's "State constitutional right to counsel when raising ineffective assistance of trial counsel [claims] for the first time [during PCR proceedings was violated.]" *Id.* at 756. The Appellate Division therefore "remand[ed] for consideration of an *initial* PCR petition after the appointment of counsel." *Id.* at 756 (emphasis added). In light of the foregoing, Petitioner's 2014 PCR petition – and the manner in which the state courts resolved the substantive claims raised therein – is the only

4

12-28). Following briefing and a non-evidentiary hearing, the PCR court denied that petition by way of an opinion and order. (ECF No. 12-10). The Appellate Division affirmed the denial of PCR relief in all respects on April 26, 2016. *Quixal*, 2016 WL 1637217. Petitioner then filed a petition for certification, which the New Jersey Supreme Court denied on September 12, 2016. *State v. Quixal*, 151 A.3d 92 (2016) (Table). Petitioner's current habeas petition followed.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 40-41 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

---

relevant PCR petition for purposes of this Court's habeas review. Furthermore, Petitioner's claim that he was barred from filing subsequent PCR petitions is controverted by the foregoing procedural history. (*See* Am. Pet., ECF No. 7 at PageID: 37 (Petitioner incorrectly claiming that the PCR court barred him from presenting a second or subsequent PCR petition)). This claim therefore fails to provide any basis for this Court to award habeas relief to Petitioner.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Harrington v. Richter*, 562 U.S. 86, 98, 100 (2011). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *accord Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 125 S. Ct. at 1376. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A federal court may not grant a writ of habeas corpus under § 2254 unless a petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In other words, "a petitioner must 'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002) (quoting *Whitney v. Horn*, 280 F.3d 240,

250 (3d Cir. 2002))). "This requirement ensures that state courts have an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Leyva*, 504 F.3d at 365 (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981))). To the extent that a petitioner's constitutional claims are unexhausted, this Court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("because [this court] will deny all of [petitioner's] claims on the merits, [it] need not address exhaustion."); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("Under 28 U.S.C. § 2254(b)(2), [this court] may reject claims on the merits even though they were not properly exhausted, and [this court will] take that approach here.").

## B. Analysis

### 1. Petitioner's Excessive Sentence Claim

Petitioner argues that his sentence is excessive. (Am. Pet., ECF No. 7 at PageID: 26, 32). More specifically, Petitioner claims that "[t]he [t]rial [c]ourt erred in imposing consecutive sentences and imposing sentences in excess of the mid-point in the sentencing range" and that he should have instead received a five-year prison term. (*Id.*). Petitioner claims that his "crimes[,] while reprehensible, were less serious than the typical sexual assault." (*Id.* at Page ID: 26). As noted above, Petitioner challenged the sentence he received in the lone direct appeal he filed, and as a result, the Appellate Division remanded for resentencing. *See Quixal*, 2010 WL 5419109 at *3. Petitioner was then resentenced to "the same term" of imprisonment on June 22, 2010. *Quixal*, 70 A.3d at 750. Because Petitioner failed to appeal the sentence imposed on him at resentencing, it does not appear that Petitioner properly exhausted this claim during his state court proceedings.

However, because this Court finds this claim is without merit, it will be denied, notwithstanding Petitioner's failure to exhaust. *See* 28 U.S.C. § 2254(b)(2).

State sentences are generally matters of state law that fall outside of the purview of federal habeas courts. *See Chapman v. United States*, 500 U.S. 453, 465 (1991) ("a person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual . . . and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment") (citations omitted); *see also Reid v. Ricci*, No. 07-3815, 2008 WL 2984207, at *12 (D.N.J. July 31, 2008) ("absent a claim that the sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process . . . the legality of [a petitioner's] state court sentence is a question of state law") (citations omitted).

Here, the facts do not indicate that the sentence Petitioner received was cruel and unusual, or arbitrary in a manner that would violate the United States Constitution. The record reveals that Petitioner was sentenced to an aggregate term of twenty-eight years imprisonment, consisting of: (i) nineteen years for his conviction on count one, *i.e.*, committing aggravated sexual assault upon a victim less than thirteen years of age; (ii) five years for Petitioner's conviction on count two, *i.e.*, endangering the welfare of a child, to run concurrently to count one; and (iii) nine years for his conviction for count three, *i.e.*, committing sexual assault upon a victim less than thirteen years of age, to run consecutively to count one. (*See* June 18, 2010 Sentencing Tr. 20-23, ECF No. 12-27).

The sentencing judge made clear that he imposed consecutive sentences on counts one and three "because they were clearly independent, separate and distinct offenses." (*Id.* at 21). The judge also noted that Petitioner's lack of any prior criminal history represented a mitigating factor which he accounted for when imposing the sentence, but further noted that there were many other

aggravating factors, including the "especially heinous, cruel and depraved" nature of Petitioner's crimes against a "particularly vulnerable [victim] because of her age" that were also taken into consideration. (*Id.* at 20-23). The record further makes clear that the sentence imposed, while on the higher range, did not go beyond the statutory maximum. *See*, *e.g.*, *Quixal*, 2010 WL 5419109 at *3.

Based on these facts, it is clear that this is not one of those rare or extreme cases where the sentence imposed was cruel and unusual, or arbitrary in a manner that would violate the United States Constitution. *See Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (explaining that a state sentence raises federal constitutional concerns only when it is grossly disproportionate to the crime committed); *United States v. Miknevich*, 638 F.3d 178, 185–86 (3d Cir. 2011) ("a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment.") (internal quotations and citations omitted); *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000) ("judges [are permitted] to exercise discretion . . . in imposing a judgment *within the range* prescribed by statute). As such, this claim for habeas relief is denied.

## 2. Petitioner's Jury Instruction Claim

Petitioner argues that the trial court's jury charge was deficient because the court failed to "instruct the jury that before considering [Petitioner's] alleged out-of-court statement it must first find such statements to be credible" and likewise failed to explain to the jury "that non-memorialized oral statement[s] must be recorded with caution."[4] (*See* Am. Pet., ECF No. 7 at

---

[4] Petitioner additionally claims – in incomprehensible fashion – that "[t]his error was not compounded by the court's refusal to instruct the jury with the false charge[.]" (*See* Am. Pet., ECF No. 7 at PageID: 34). Based on this convoluted language, it is unclear to this Court what exactly Petitioner is referring to. Petitioner fails to bolster this assertion with additional record evidence or other support and this Court has been unable to find any evidence in the record which

PageID: 34). In other words, it appears that Petitioner claims that the trial court failed to properly instruct the jury on the import of the pre-trial statements Petitioner and S.B. made to the police. Petitioner does not explain how the trial court's failure to include the-above referenced language within the charge prejudiced his defense nor does he cite to any case law in support of this claim. Moreover, it does not appear that Petitioner raised this issue on direct appeal or during PCR proceedings. It therefore appears that Petitioner failed to properly exhaust this claim during his state court proceedings. This Court will nonetheless deny this claim as being without merit, notwithstanding Petitioner's failure to exhaust. *See* 28 U.S.C. § 2254(b)(2).

That a jury "instruction was allegedly incorrect under state law is not[, in and of itself,] a basis for habeas relief." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir. 2001) (quoting *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)), *cert. denied*, 534 U.S. 919 (2001). Habeas relief is therefore available based on an allegation that a petitioner's jury instructions were improper only when "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Where the challenge is a failure to give an instruction, as it is in this claim, that burden is "especially heavy" because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law.*" Henderson* at 155. This Court must consider the challenged jury instruction in the context of the entire charge and the trial as a whole. *Duncan*, 256 F.3d at 203. That a challenged instruction was "undesirable, erroneous, or even universally condemned," is insufficient to warrant

---

suggests that the trial court refused to include a "false charge" for this claim. Ultimately, the same legal analysis governing Petitioner's other jury instruction-related claims demonstrates that Petitioner is not entitled to habeas relief based on the trial court's purported failure to include this particular instruction.

habeas relief.  *Id.*  A petitioner can only prevail on such a claim by showing that the instruction rendered his trial fundamentally unfair.  *Id.*

As noted above, Petitioner is challenging the trial court's instructions to the jury with respect to their consideration – and the underlying evidentiary value – of the pre-trial statements which the victim and Petitioner made to police during the criminal investigation.  The jury was charged, in relevant part, as follows:

> . . . . [Y]ou are the judges of the facts and as judges of the facts, you are to determine the credibility of the various witnesses as well as the weight to be attached to their testimony.  You and you alone are the sole and exclusive judges of the evidence, of the credibility of the witnesses and the weight to be attached to the testimony of each witness.
>
> . . . . Whether or not [Petitioner] has been proven guilty beyond a reasonable doubt is for you to determine based on all of the evidence presented during the trial.  Any comments by counsel are not controlling.
>
> It is your sworn duty to arrive at a just conclusion after considering all the evidence which was presented during the course of the trial.
>
> . . . .
>
> . . . . You will only consider such facts which in your judgment have been proven by the testimony of witnesses or from exhibits admitted into evidence by the Court.
>
> . . . .
>
> As the judges of the facts, you are to determine the credibility of the witnesses, and in determining whether a witness is worthy of belief and, therefore, credible, you may take into consideration: The appearance and demeanor of the witness; the manner in which he or she may have testified; the witness's interest in the outcome of the trial, if any; his or her means of obtaining knowledge of the facts; the witness'[s] power of discernment, meaning their judgment or understanding; his or her ability to reason, observe, recollect and·relate; the possible bias, if any, in favor of the side for whom the witness testified; the extent to which,

if at all, each witness is either corroborated or contradicted, is supported or discredited by other evidence; whether the witness testified with an intent to deceive you; the reasonableness or unreasonableness of the testimony the witness has given; whether the witness made any inconsistent or contradictory statement; and any and all other matters in the evidence which serve to support or discredit his or her testimony.

Through this analysis, as the judges of the facts, you weigh the testimony of each witness and then determine the weight to give to it. Through that process you may accept all of it, a portion of it or none of it.

If you believe that any witness or party willfully or knowingly testified falsely to any material facts in the case with ·intent to deceive you, you may give such weight to his or her testimony as you may deem it is entitled. You may believe some of it, or you may, in your discretion, disregard all of it.

If any witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness'[s] testimony in other particulars, and you may reject all the testimony of such a witness or you may give it the credibility you may think it deserves.

(*See* Oct. 4, 2007 Tr. 85-91, ECF No. 12-24).

When reviewing the charge to the jury in this greater context, it is clear that the absence of the additional language Petitioner claims should have been included in the jury charge did not render Petitioner's trial fundamentally unfair. The instructions make clear that the jury was to consider only those facts which, in their judgment, were proven by witness testimony and the exhibits admitted into evidence. It is therefore unsurprising that Petitioner's counsel expressly indicated that he had no objections to any portion of the trial judge's charge to the jury. (*See* Oct. 4, 2007 Tr. 105:21-25, ECF No. 12-24). Furthermore, "[t]he evidence of [Petitioner's] guilt [in this case] was strong[.]" *Quixal*, 2016 WL1637217 at *2. It included the compelling testimony of numerous witnesses and "DNA evidence taken from the inside of [S.B.'s] underwear" which matched Petitioner's DNA. *Id.* Based on the foregoing, it is clear that the jury charge in this

matter did not render Petitioner's trial fundamentally unfair. *Duncan*, 256 F.3d at 203. As such, this Court finds that Petitioner is not entitled to habeas relief on his jury charge claim.

### 3. Petitioner's Sufficiency of the Evidence Claim

Petitioner also asserts that "the State failed to prove 'all' the elements beyond [a] reasonable doubt of the charges adjudicated." (*See* Am. Pet., ECF No. 7 at PageID: 33). In so doing, Petitioner essentially challenges the sufficiency of the evidence supporting the three charges upon which he was convicted. It does not appear that Petitioner raised this issue on direct appeal or during PCR proceedings, and that Petitioner therefore failed to properly exhaust this claim before the state courts. This Court will nonetheless deny this unexhausted claim as being without merit. *See* 28 U.S.C. § 2254(b)(2).

When a petitioner presents a claim challenging the sufficiency of the evidence against him, "a reviewing court must ask 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Eley*, 712 F.3d at 847 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A court sitting in habeas review may therefore overturn a conviction for insufficiency of the evidence only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 324). "Under *Jackson*, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012). Under this "deferential federal standard," juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial" and federal courts must not "unduly

impinge[] on the jury's role as factfinder" by engaging in "fine-grained factual parsing." *Id.* So long as a rational fact finder could find all of the essential elements of the charged crimes beyond a reasonable doubt given the benefit of all reasonable inferences and viewing the facts in the light most favorable to the State, a habeas claim based on the sufficiency of the evidence must fail.

Here, the record makes clear that "[t]he evidence of [Petitioner's] guilt was strong. The victim gave a statement and testified, [Petitioner] gave a statement, and there was DNA evidence." *Quixal*, 2016 WL 1637217 at *2. Indeed, there was ample evidence presented at trial which showed that Petitioner "took the [six-year old victim] to a secluded area of the garden center [where Petitioner was then working], kissed her on the lips, pulled her pants and underwear down and licked her on the vagina[, and then took] out his penis and asked her to touch it." *Id.* at *1. Thus, a rational fact finder could easily have found that Petitioner sexually assaulted S.B. Petitioner's contention that there was insufficient evidence of his guilt is thus patently without merit. Because the evidence in this matter was more than sufficient to convict Petitioner of aggravated sexual assault upon a victim less than thirteen years of age, endangering the welfare of a child, and sexual assault upon a victim less than thirteen years of age, Petitioner is not entitled to habeas relief on his sufficiency of the evidence claim.

### 4. Petitioner's Evidentiary Claims

Petitioner next contends that the trial court erred in "allowing the [State's] use of out of [court] statements, unauthenticated pictures, and testimony of [S]tate's witnesses." (*See* Am. Pet., ECF No. 7 at PageID: 33).

Claims challenging the admissibility of evidence are normally considered questions of state law which are not cognizable in habeas corpus. *See Marshall v. Lonberger*, 459 U.S. 422, 438

(1983) ("the Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules"); *Keller v. Larkins*, 251 F.3d 408, 416 n. 2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence"); s*ee also Estelle v. McGuire*, 502 U.S. 62, 67-70 (1991); *Wilson v. Vaughn*, 533 F.3d 208, 213-14 (3d Cir. 2008), *cert. denied*, 556 U.S. 1170 (2009).

Habeas relief is therefore only appropriate where a petitioner can show that the admission of the evidence in question denied him Due Process under the Fourteenth Amendment by depriving him of the "fundamental elements of fairness in [his] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Medina v. California*, 505 U.S. 437, 443 (1992)). "In order to satisfy due process, [Petitioner's] trial must have been fair, it need not have been perfect." *Id.* (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). Thus, a Due Process violation will only occur in the context of a state court evidentiary ruling when that ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).

Here, Petitioner does not specify which particular evidence he believes was improperly admitted nor does he cite to any case law in support of this claim. The record before this Court shows that the only specific challenge to any of the trial court's evidentiary rulings which Petitioner pursued on appeal concerned the improper credibility assessments made by two police

officers during their testimony at trial.[5]  The Appellate Division considered and rejected the lone

evidentiary claim that Petitioner presented to it as follows:

> During [Petitioner's] trial, the prosecution presented a number of witnesses, including Detective Stio, who testified with respect to her interview of S.B. and Sergeant Cilento, who testified with respect to his interrogation of [Petitioner].  [Petitioner] complains on appeal that these witnesses improperly commented with respect to credibility, Detective Stio expressing the view that S.B. was being truthful, Sergeant Cilento the view that [Petitioner] was, at the outset of the interrogation, being deceptive.

> We agree with [Petitioner] that it is generally inappropriate for one witness to comment upon the credibility of another witness. *State v. T.C.*, 347 N.J. Super. 219, 238 (App. Div. 2002), *certif. denied*, 177 N.J. 222 (2003).  Having reviewed the trial record, however, we are satisfied that a reversal is not called for.  We note first that there was no objection at trial to these comments.  *R.* 2:10-2.  In addition, the comments of Detective Stio to which [Petitioner] now objects were elicited during [Petitioner's] cross-examination, not during questioning by the prosecutor.  Further, the trial court clearly instructed the jury in its charge that determining the credibility of the witnesses was their exclusive responsibility.  We presume that the jury followed the court's instructions.  *See State v. Manley*, 54 N.J. 259, 271 (1969).

*Quixal*, 2010 WL 5419109, at *2.

Petitioner has presented this Court with no Supreme Court case to which this decision was

contrary, nor a case which the state court unreasonably applied.  Because Petitioner has not shown

that the Appellate Division's ruling was contrary to or an unreasonable application of relevant

Supreme Court decisions, he could only be entitled to habeas relief if the admitted evidence in this

---

[5]   The record confirms that Petitioner failed to claim that any other specific evidence was improperly introduced at his trial on direct appeal or during his counseled PCR proceedings.  For example, while Petitioner claimed that trial counsel was ineffective for failing to argue that Petitioner was not guilty of sexual assault based on the facts detailed in his confession to Sergeant Cilento, Petitioner in no way challenged the trial court's admission of that statement into evidence.  *Quixal*, 2010 WL 5419109 at *2.  The Court is likewise unable to locate any evidence in the record which even remotely suggests that unauthenticated pictures were improperly admitted at trial.

matter denied him a fundamentally fair trial. In context, it is clear that the introduction of Petitioner's confession, the police officers' above-referenced testimony, and any other such heretofore unspecified State's evidence introduced during Petitioner's trial did not render that proceeding fundamentally unfair. Petitioner is therefore not entitled to habeas relief on this claim. *Glenn*, 743 F.3d at 407.

### 5. Petitioner's Ineffective Assistance of Counsel Claims

Petitioner asserts that he received ineffective assistance of trial counsel. The standard applicable to such claims is well established:

> Claims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).


### a. Counsel's Failure to Argue That Petitioner Was Not Guilty of Sexual Assault Based on Petitioner's Confession to Sergeant Cilento

Petitioner first contends that counsel was ineffective because he failed to argue that Petitioner was not guilty of aggravated sexual assault because he kissed S.B. 'above' and not 'on' the vagina." (Am. Pet., ECF No. 7 at PageID: 26). The PCR court analyzed and rejected this claim as follows:

> In [Petitioner's] confession, he explained what had occurred with the victim while talking with the officers. He states:

> Q: Where did you kiss her?

> A: On top of the vagina.

> [Petitioner] then further explained his conduct when questioned by the officers as follows:

Q: When did you realize that what you were doing was bad? You said that you thought it was bad?

A: When I give the kiss on the vagina.

Petitioner also told the officers that when he kissed the victim on the vagina, he used his lips only, and not his tongue. At trial, [Petitioner] maintained that his entire confession was the result of police threats and aggression. Therefore, trial counsel had tactical reasons for making the decision not to put the argument of "on top of" versus "on" the vagina before the jury at trial.

When reviewing counsel's performance at the trial level, judicial scrutiny must be highly deferential because "it is all too tempting for a defendant to second guess counsel's assistance after conviction." *Strickland*, 466 U.S. at 690. "Every effort [should] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenging conduct, and to evaluate the conduct from counsel's perspective at the time. *Strickland* at 689; *State v. Arthur*, 184 N.J. 307, 318-319 (2005).

In this case, trial counsel's decision not to argue the distinction between "on top of the vagina" versus "on the vagina" to the jury did not amount to ineffective assistance of counsel. In addition to [Petitioner] giving explicit detail in his 13 page confession, there was other evidence adduced at trial with regard to [Petitioner] kissing the victim's vagina. In fact, the victim herself testified that [Petitioner], "kissed [her] on [her] lips and then he licked [her] on [her] private." Therefore, counsel not pursuing the semantics of whether it was "on top" or "on" the victim's vagina, in the [Petitioner's] own words, amounts to a tactical decision, and therefore was not deficient performance.

Deficient performance is established by proving that "counsel's acts or omissions fell 'outside the wide range of professionally competent assistance' considered in light of all the circumstances of the case." *State v. Castagna*, 187 N.J. 293, 314 (2006). Here, trial counsel made a strategic decision, which was not "outside the wide range of professionally competent assistance." Therefore, [Petitioner] failed to make out a *prima facie* case of ineffective assistance of counsel on this claim.

*State v. Quixal*, No. 06-11-2010-1, slip op. at 7-9 (N.J. Super. Ct. Law Div. Aug. 29, 2014)

(internal citations to record omitted) (available at ECF No. 12-10).

The Appellate Division affirmed the denial of PCR relief to Petitioner "substantially for the reasons explained by [the PCR judge] in his written opinion." *Quixal*, 2016 WL 1637217 at *2. The Appellate Division agreed that Petitioner failed to demonstrate "that trial counsel was ineffective" and "also made no showing that he was prejudiced" as a result. *Id.*

Having reviewed the relevant portions of the record, *e.g.*, the transcript of the August 1, 2014 PCR hearing (*see* ECF No. 12-28), the written decisions of the PCR court and the Appellate Division, *etc.*, and giving appropriate deference to the state courts' factual findings, *see* 28 U.S.C. § 2254(e)(1), this Court agrees with the PCR court and the Appellate Division that Petitioner failed to establish either deficient performance by his trial counsel or resulting prejudice to his defense. The state courts' rejection of Petitioner's claim that his counsel was ineffective for failing to argue that he was not guilty of sexual assault because he kissed S.B. 'above' and not 'on' the vagina is not contrary to, nor represents an unreasonable application of, Supreme Court precedent in light of the facts at hand. As such, Petitioner is not entitled to habeas relief on this claim.

### b. Counsel's Purported "Failure to Investigate"

Petitioner also asserts that he is entitled to habeas relief based on counsel's "failure to investigate[.]" (ECF No. 7 at Page ID: 36). The standard applicable to claims that counsel was ineffective in failing to call certain witnesses is similar to the above-referenced failure to investigate standard. Again, *Strickland* requires that a petitioner "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *United States v. Graves*, 613 F. App'x 157, 159 (3d Cir. 2015) (quoting *Strickland*, 466 U.S. at 689) (internal quotation marks omitted). When presented with such a claim, courts are "required not simply to give [the] attorney[] the benefit of the doubt, but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as [he] did." *Branch v.*

*Sweeney*, 758 F.3d 226, 235 (3d Cir. 2014) (alterations in original) (quoting *Pinholster*, 563 U.S.

at 195). Indeed, as this Court has explained:

> In *Strickland*, the Supreme Court held that trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691. "The failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation," and "the failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." *United States v. Travillion*, 759 F.3d 281, 293 n. 23 (3d Cir. 2014) (internal quotations omitted) . . . .

> Where a [p]etitioner can show that counsel's failure to investigate amounts to deficient performance, he must still show prejudice. In order to do so,

>> a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result."

> *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of Petitioner's case); *accord United States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

*Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016).

Here, Petitioner baldly claims only that his counsel "fail[ed] to investigate." (ECF No. 7 at PageID: 36). Based on the record of PCR proceedings, it appears that this portion of Petitioner's ineffective assistance of counsel claim speaks to Petitioner's argument to the PCR court that his attorney did not adequately investigate additional information that Petitioner's brother, Elfido Quixal ("Elfido"), had regarding the circumstances surrounding Petitioner's arrest and subsequent confession. Petitioner argued to the PCR court that Elfido would have testified that the police officers investigating S.B.'s sexual abuse claims acted "very abusively" towards Petitioner and that this would have shown that Petitioner's confession was coerced. *Quixal*, slip op. at 6. Petitioner further claimed that counsel's failure to call Elfido to testify at Petitioner's pre-trial hearing on the admissibility of Petitioner's confession and at trial prejudiced his defense. *Id.* at 3. The PCR court rejected this notion. It found that "the failure to call [Elfido, both] as a witness at the pre-trial motion[, and during trial did not fall] 'outside the range of professionally competent assistance.' . . . The decision not to call [Elfido as a] witness is not so egregious that [Petitioner] was denied the effective assistance of counsel. Further, [Petitioner] does not show that counsel's performance deprived [him of] a reliable result under *Strickland*." *Quixal*, slip op. at 6, 9.

The Appellate Division affirmed the denial of PCR relief to Petitioner "substantially for the reasons explained by [the PCR judge.]" *Quixal*, 2016 WL 1637217 at *2. The Appellate Division agreed that Petitioner failed to demonstrate deficient performance or prejudice based on counsel's decision to not call Elfido to testify, and correctly noted that "the evidence of [Petitioner's] guilt at trial was strong [where t]he victim gave a statement and testified, [Petitioner] gave a statement, and there was DNA evidence." *Id.*

Having reviewed the relevant portions of the record, and affording appropriate deference to the state courts' factual determinations, *see* 28 U.S.C. § 2254(e)(1), this Court finds that the

state courts' rejection of Petitioner's claim that his counsel was ineffective for failing to investigate Elfido's account of his arrest and for subsequently deciding to not call Elfido as a witness is not contrary to, nor an unreasonable application of, Supreme Court precedent. As such, Petitioner is not entitled to habeas relief on this claim.

### c. Counsel's Purported Failure to Adequately Prepare Petitioner to Testify at Trial

During PCR proceedings, Petitioner also claimed that his attorney failed to adequately prepare him to testify. The PCR court provided the following explanation in rejecting this claim:

> [P]etitioner claims that trial counsel's failure to prepare [Petitioner] to testify on his own behalf at trial resulted in his poor performance, which amounted to ineffective assistance of counsel. [Petitioner] maintains that his lack of preparation "negatively impacted" on his trial performance.
>
> There is no evidence that defense counsel's failure to prepare [P]etitioner to testify in court negatively impacted his performance at trial. In this case, [Petitioner] had previously given a detailed, 13 page confession to the police, in which he detailed how he had kissed the six year old child's mouth, kissed her vagina with his lips, but not his tongue, and then grabbed his own erect penis. [Petitioner] was confronted with this confession when he decided to testify on his own behalf at trial. This Court does not agree that trial counsel's alleged lack of preparing [Petitioner] negatively impacted his testimony, rather [Petitioner] was subjected to cross-examination based on his own pretrial confession.
>
> Therefore, [P]etitioner fails to make a *prima facie* claim of ineffective assistance of counsel under *Strickland* because counsel's conduct was not ''deficient', nor is there a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Nunez-Valdez*, 200 N.J. 129, 138-39 (2009) (quoting *Strickland*[, 466 U.S. at 694] (1984)).

*Quixal*, slip op. at 6-7 (internal citations to record omitted).

The Appellate Division affirmed "substantially for the reasons explained by [the PCR judge] in his written opinion." *Quixal*, 2016 WL 1637217 at *2. The Appellate Division noted that this issue "relate[d] to trial strategy and [Petitioner] made no showing that trial counsel was ineffective" or "that he was prejudiced" as a result. *Id.*

This Court agrees with the PCR court and the Appellate Division that Petitioner failed to establish either deficient performance by his trial counsel or resulting prejudice to his defense. This Court therefore finds that the state courts' resolution of this claim is not contrary to, nor an unreasonable application of, relevant Supreme Court precedent. As such, Petitioner is not entitled to habeas relief on this ineffective assistance of counsel-related claim.

### d. Counsel's Failure to Object to Testimony Opining on Petitioner and S.B.'s Credibility

Petitioner also argues that counsel proved ineffective in failing to object to those portions of Detective Stio and Sergeant Cilento's testimony at trial in which they expressed opinions about the credibility of S.B. and Petitioner, respectively. (ECF No. 7 at PageID: 26, 36). The PCR court provided the following explanation in rejecting this claim:

> [P]etitioner claims that trial counsel's failure to object to the testimony of two of the State's witnesses at trial who offered opinions of credibility resulted in ineffective assistance of counsel. [Petitioner] raised this issue on his direct appeal. The Appellate Division[, in its opinion affirming Petitioner's conviction on direct appeal,] noted that it is generally inappropriate for a witness to comment on the credibility of another witness. However, the Appellate Division stated that the trial court gave clear instructions to the jury that determining the credibility of a witness was their exclusive responsibility. Therefore, the comments made by the State's witnesses did not rise to the level of warranting a reversal of [Petitioner's] conviction. This Court agrees with the Appellate Division's analysis, and finds that the curative instruction given by the trial judge to the jury resolved any issue with the witnesses' testimony as to credibility.

*Quixal*, slip op. at 9 (internal citations omitted).

The Appellate Division affirmed the denial of PCR relief to Petitioner "substantially for the reasons explained by [the PCR judge.]" *Quixal*, 2016 WL 1637217 at *2. The Appellate Division also added the following:

> [Petitioner's] arguments concerning ineffective assistance of trial counsel all relate to trial strategy and [Petitioner] made no showing that trial counsel was ineffective. *See State v. Parker*, 212 N.J. 269, 279 (2012) (explaining that counsel's alleged deficiency must be "serious" and that a defendant "must overcome a strong presumption that counsel rendered reasonable professional assistance") (quoting and citing *Strickland*, [466 U.S. at 687]. Moreover, the evidence of [Petitioner's] guilt at trial was strong. The victim gave a statement and testified, [Petitioner] gave a statement, and there was DNA evidence. Accordingly, [Petitioner] also made no showing that he was prejudiced by any alleged ineffective assistance of counsel.

*Quixal*, 2016 WL 1637217 at *2.

Having reviewed the relevant portions of the record, and giving appropriate deference to the state courts' factual findings, *see* 28 U.S.C. § 2254(e)(1), this Court agrees that Petitioner failed to establish either deficient performance by his trial counsel or resulting prejudice to his defense during state court proceedings. The state courts' rejection of Petitioner's final ineffective assistance of counsel-related claim is not contrary to, nor an unreasonable application of, relevant Supreme Court precedent based on the facts in the record. As such, Petitioner is not entitled to habeas relief on this claim.

### 6. Additional Miscellaneous Claims Raised by Petitioner

Petitioner also baldly claims that: (i) the state courts "categorically presum[ed] him to be an illegal immigrant[;]" (ii) the State of New Jersey does not have jurisdiction over him in a manner sufficient to imprison him; and (iii) he was denied his right to an allocution. (ECF No. 7 at PageID: 33-34). Petitioner fails to cite to any facts in the record which substantiate these claims. This

Court has also failed to locate any such factual support in the record. Petitioner likewise fails to cite to any legal authority, persuasive or otherwise, which even marginally suggests that Petitioner would be entitled to habeas relief based on these claims. This Court is similarly unaware of any such legal authority which suggests that habeas relief is appropriate based on the foregoing, factually unsubstantiated, one-off assertions. Moreover, Petitioner does not appear to have raised any of these arguments in the state courts. This Court rejects each of these specious claims as factually unsupported and legally meritless.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because all of Petitioner's habeas claims are without merit for the reasons expressed above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

**IV. CONCLUSION**

      For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED and Petitioner is DENIED a certificate of appealability.  An appropriate order follows.


                                      ***s/ Susan D. Wigenton***

Dated: September 17, 2018               Hon. Susan D. Wigenton,
                                      United States District Judge